53 F.3d 183
 1995 A.M.C. 2141
 CERES TERMINALS, INC., Plaintiff-Appellant,
v.
INDUSTRIAL COMMISSION OF ILLINOIS, its Members, and Alfred
Wells, Defendants-Appellees.
PETROLEUM SERVICE CORPORATION, Plaintiff-Appellant,
v.
INDUSTRIAL COMMISSION OF ILLINOIS, its Members, and Mark
Smith, Defendants-Appellees.
 Nos. 94-3410, 94-3411.
 United States Court of Appeals,
Seventh Circuit.
 Argued March 28, 1995.
Decided April 28, 1995.
Rehearing and Suggestion for Rehearing
En Banc Denied June 1, 1995.
 
 Gregory P. Sujack (argued), David F. Buysse, Kerrie A. Lethbridge, Garofalo, Hanson, Schreiber & Vandlik, Chicago, IL, for plaintiff-appellant.
 Jan E. Hughes, Asst. Atty. Gen., Office of the Atty. Gen., Civ. Appeals Div. (argued), Chicago, IL, for Industrial Com'n of Ill., Robert Malooly, Valerie Peiler, Linzey Jones, Richard Gilgis, John Hallock, Jacqueline Kinneman, Barry Ketter.
 James L. Donohue, Janet C. Holmgren, Todd A. Ramlow, Donohue & Clark, Rockford, IL, for Alfred B. Wells.
 Before BAUER, EASTERBROOK, and RIPPLE, Circuit Judges.
 EASTERBROOK, Circuit Judge.
 
 
 1
 Two stevedore contractors filed federal suits seeking to fend off workers' compensation claims pending before the Industrial Commission of Illinois. Having decided to evade the well-pleaded-complaint doctrine, plaintiffs threw caution to the winds--for they named among the defendants the Commission itself (despite the eleventh amendment) and its members (despite principles of administrative adjudicators' immunity and several flavors of abstention doctrine). Embroiled in proceedings in a state tribunal, the firms wanted a second opinion, but federal courts do not welcome duplicative litigation. Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 13-15, 103 S.Ct. 927, 936-37, 74 L.Ed.2d 765 (1983). The district judge dismissed the suits for want of jurisdiction and added that, if he had jurisdiction, he would abstain. We agree with the first conclusion and therefore do not address the second.
 
 
 2
 Alfred Wells is a longshore worker and Mark Smith a tankerman. Each filed a claim under the Illinois workers' compensation program, asserting that he had been injured while working on a barge. Each employer replied that any injury on a barge floating in the navigable waters of the United States is compensable, if at all, under the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. Secs. 901-50. Each employer asked the state's Industrial Commission to dismiss the claim. While awaiting a final decision, each employer filed an action in federal court under the Declaratory Judgment Act, 28 U.S.C. Sec. 2201, seeking a declaration that state power ends at the water's edge. The water's-edge rule comes from Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917). When Congress responded to Jensen by authorizing states to apply their workers' compensation programs to some maritime injuries, the Court held the legislation unconstitutional. Knickerbocker Ice Co. v. Stewart, 253 U.S. 149, 40 S.Ct. 438, 64 L.Ed. 834 (1920); Washington v. W.C. Dawson & Co., 264 U.S. 219, 44 S.Ct. 302, 68 L.Ed. 646 (1924). Developments since 1924 have called Knickerbocker--if not Jensen itself--into question. E.g., Prudential Insurance Co. v. Benjamin, 328 U.S. 408, 66 S.Ct. 1142, 90 L.Ed. 1342 (1946). Cf. American Dredging Co. v. Miller, --- U.S. ----, ---- - ----, 114 S.Ct. 981, 987-88, 127 L.Ed.2d 285 (1994), and id. at ---- - ----, 114 S.Ct. at 990-91 (Stevens, J., concurring). But Knickerbocker, although confined to its facts by Askew v. American Waterways Operators, 411 U.S. 325, 344, 93 S.Ct. 1590, 1601, 36 L.Ed.2d 280 (1973), has not been formally overruled, and plaintiffs insist that they are therefore rid of state workers' compensation programs when a plumb line dropped from an injured worker would encounter navigable water before it touched fast land.
 
 
 3
 Our initial question, however, is not whether Knickerbocker has some residuum of force--and whether an inferior tribunal may disregard opinions that exist more as spectral apparitions than as living forces in the law. Compare Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 484, 109 S.Ct. 1917, 1921-22, 104 L.Ed.2d 526 (1989), Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd., 460 U.S. 533, 535, 103 S.Ct. 1343, 1344, 75 L.Ed.2d 260 (1983), and Hutto v. Davis, 454 U.S. 370 (1982), with Limbach v. Hooven & Allison Co., 466 U.S. 353, 104 S.Ct. 1837, 80 L.Ed.2d 356 (1984). Instead we must determine whether the power of decision belongs to a federal court. Jensen, Knickerbocker, Washington, and similar cases came to the Supreme Court from state tribunals--not because employers were eager to litigate there, but because they found it impossible to obtain a federal forum. Employers cannot remove compensation cases pending in state courts. 28 U.S.C. Sec. 1445(c). And a quest for an independent adjudication in federal court founders on the limited scope of 28 U.S.C. Sec. 1331. A case arises under federal law, within the meaning of Sec. 1331, only when the claim for relief depends in some way on federal law, "unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose." Taylor v. Anderson, 234 U.S. 74, 75-76, 34 S.Ct. 724, 724-25, 58 L.Ed. 1218 (1914). See also Gully v. First National Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936); Louisville & Nashville R.R. v. Mottley, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). Wells and Smith thus could not have obtained federal jurisdiction by alleging that their employers would invoke the Knickerbocker rule.
 
 
 4
 The Declaratory Judgment Act, enacted in 1934, created the possibility of using the defense as the principal claim in an independent suit. The holder of a federal immunity against the claim under state law could ask a federal court to vindicate the federal right. Although the Anti-Injunction Act, 28 U.S.C. Sec. 2283, forbids most coercive relief against ongoing state proceedings, the Declaratory Judgment Act seemed just the ticket: what would be a defense in state court becomes the claim itself in federal court, satisfying the well-pleaded-complaint doctrine, and the non-coercive remedy curtails problems under Sec. 2283. If successful in obtaining a declaratory judgment, the victor returns to state court and offers the federal decree under the law of preclusion. Yet this procedure has not won approval. Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937), held that the Declaratory Judgment Act does not authorize litigation of cases that otherwise fall outside federal jurisdiction. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950), delivered the coup de grace, holding that if the plaintiff cannot get into federal court by anticipating a federal defense, the defendant cannot use the Declaratory Judgment Act as entree by assuming the role of plaintiff. Cf. Samuels v. Mackell, 401 U.S. 66, 69-74, 91 S.Ct. 764, 766-69, 27 L.Ed.2d 688 (1971) (a declaratory judgment action does not avoid Sec. 2283 and principles of comity if state litigation is under way); Texas Employers' Insurance Association v. Jackson, 862 F.2d 491, 506 (5th Cir.1988) (en banc).
 
 
 5
 Many federal courts were skeptical that Skelly Oil had disallowed an entire category of litigation that seemed to satisfy the Gully requirement that the federal issue be part of the claim for relief. Despite Skelly Oil, they went on issuing declaratory judgments that one or another federal defense had to be recognized. See Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 10A Federal Practice and Procedure Sec. 2767 at 742-43 n. 12 (2d ed. 1983) (collecting cases). All that came to an end in 1983, when Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 13-22, 103 S.Ct. 2841, 2848-53, 77 L.Ed.2d 420 (1983), reiterated the sweep of the Skelly Oil exclusion. All that remains is a possibility that goes by the misleading name of "complete preemption": if federal law so occupies the field that it is impossible even to frame a claim under state law, then the case arises under federal law. The name misleads because, when federal law occupies the field, the claim arises under that law; no one needs to try the Skelly Oil maneuver of anticipating a federal "defense" of preemption. See In re Amoco Petroleum Additives Co., 964 F.2d 706, 709 (7th Cir.1992); Bartholet v. Reishauer A.G. (Zurich ), 953 F.2d 1073, 1075 (7th Cir.1992). The Employee Retirement Income Security Act (ERISA) satisfies this requirement in many respects. Metropolitan Life Insurance Co. v. Taylor, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). So does the regulation of the collective-bargaining process in labor law. But there is nothing remotely comparable in the admiralty. Congress has not "occupied" the field of workers' compensation for maritime employees; to the contrary, it has tried to authorize states to expand their role. Knickerbocker held that Congress had gone too far, but the essential question for jurisdictional purposes is whether Congress has, by statute, taken the subject away from state tribunals and given it to federal courts. The answer for workers' compensation programs is a ringing "No!" State agencies and courts regularly adjudicate compensation claims arising in what has come to be called the jurisdictional "twilight zone." Davis v. Department of Labor, 317 U.S. 249, 256, 63 S.Ct. 225, 229, 87 L.Ed. 246 (1942). See Director, OWCP v. Perini North River Associates, 459 U.S. 297, 306-12, 103 S.Ct. 634, 641-45, 74 L.Ed.2d 465 (1983). Instead of giving employers ready access to federal court, Congress enacted Sec. 1445(c) to allow injured workers unfettered choice of forum. The saving-to-suitors proviso to the admiralty jurisdiction, 28 U.S.C. Sec. 1333(1), reinforces the conclusion that state courts have a legitimate role to play in adjudicating maritime claims.
 
 
 6
 Our two employers appear to think that a federal "defense" for purposes of Franchise Tax Board is limited to assertions that the workers were not injured, that they have already been compensated, and the like. By contrast, plaintiffs say, they are urging that the Industrial Commission lacks "jurisdiction." The defenses plaintiffs offer as illustrations of the scope of Franchise Tax Board are not "federal," but let that pass. Even if Jensen and Knickerbocker define the subject-matter jurisdiction of state tribunals (which is doubtful), a state commission or court is perfectly competent to determine the scope of its own jurisdiction. An assertion that "tribunal X lacks jurisdiction" does not seek any relief; it is paradigmatically defensive. Ceres Terminals and Petroleum Service do not want a federal court to compel Wells and Smith to file claims under the LHWCA; they would be delighted if Wells and Smith surrendered quietly. All the employers want out of these actions are declarations that Wells and Smith cannot recover benefits under state law. Under Skelly Oil and Franchise Tax Board, that federal defense to a state claim does not arise under federal law. The district court therefore lacked jurisdiction.
 
 
 7
 AFFIRMED.