**UNITED STATES of America,
Plaintiff—Appellee,**

v.

**Bryan Joseph HENRY, Defendant—
Appellant.**

**No. 03–30147.
D.C. No. CR–02–00009–RRB.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 6, 2004.

Decided Sept. 1, 2004.

courts of this circuit except as provided by Ninth Circuit Rule 36–3.

Jo Ann Farrington, Anchorage, AK, for Plaintiff–Appellee.

Mary C. Geddes, Sue Ellen Tatter, Anchorage, AK, for Defendant–Appellant.

Before HALL, KLEINFELD, and WARDLAW, Circuit Judges.

## MEMORANDUM *

Bryan Joseph Henry appeals from his guilty plea conviction and sentence for possession of a controlled substance—"ecstacy"—with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and we affirm the district court.

### 1.

■ Henry argues that the district court ought to have suppressed the evidence against him on the basis of an illegal search of the base quarters in which he was purportedly residing. While it is well-established that a person's status as an overnight guest may itself be sufficient to suggest a legitimate expectation of privacy, *Minnesota v. Olson*, 495 U.S. 91, 96–97, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990), a defendant's "bald assertion" of that status is insufficient to satisfy the necessary quantum of proof. *United States v. Armenta*, 69 F.3d 304, 308 (9th Cir.1995). *Rakas v. Illinois*, 439 U.S. 128, 141, 99 S.Ct. 421, 58 L.Ed.2d 387 n. 9. The room was registered to Ms. Bacote, not to Henry. When confronted by investigators, Henry made no pretense of being familiar with Ms. Bacote, the ostensible inhabitant of Room 85 who was its only registered guest. Henry's open suitcase was stored just in front of the dresser, but he did not have a key to the room. In short, Henry's most compelling evidence that he was a guest in the hotel room was his word. Such a dearth of evidence is insufficient to carry his burden.

### 2.

Henry contends that the investigative officer searched his suitcase without first obtaining valid consent. "Voluntariness is 'based on the totality of the circumstances surrounding the giving of consent,'" but the evidence is to be viewed in the light most favorable to the fact-finder's decision. *United States v. Castillo*, 866 F.2d 1071, 1082 (9th Cir.1988) (citation omitted). The facts support a finding that Henry voluntarily consented to the search of his suitcase.

By the time he entered Room 85 to retrieve his belongings, Henry had been told that he would be released without further detention. Although the officers who detained him were armed, Henry does not suggest that they ever drew their weapons, and the lead officer testified that his weapon was holstered at all times. Henry was specifically informed that he need not answer any questions. Nevertheless, he chose to do so. Moreover, it was only after being informed that he was going to be released that Henry affirmatively requested that he be permitted to retrieve his belongings from inside the room. Although Henry initially refused permission to search the suitcase, he then granted it freely. It was not clear error for the district court to conclude that, based on the totality of the circumstances, Henry's consent had been given voluntarily.

### 3.

Henry asserts that the district court ought to have granted his motion to suppress as the evidence obtained was the fruit of an unlawful arrest. We need not reach the question of whether the investigatory stop of Henry ever matured into an arrest unsupported by probable cause because, at the time the drugs were discovered in Henry's suitcase, the duration of his

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

temporary detention was eminently reasonable. *See Washington v. Lambert,* 98 F.3d 1181, 1185 (9th Cir.1996).

■ Henry and the three other men were initially detained in connection with the potentially unauthorized retention of a military ID card by Bacote and the marijuana discovered in Room 85. By approximately 5:30 p.m., however, the men had been cleared of any wrongdoing in connection with those suspicions, and were told that they would be released. It was only after Henry specifically requested permission to retrieve his belongings that he was escorted back into Room 85. Although Henry remained handcuffed while in the room, his restraints were only necessary because the room was a "hot" crime scene. The drugs were discovered momentarily thereafter, long before Henry was compelled to accompany the agents as they sought to conclusively identify the nature of the pills they discovered in his suitcase. Since Henry's brief detention until the officers discovered the pills was reasonable, the district court did not err in denying the motion to suppress.

### 4.

Henry argues that his plea was invalid because of errors in the Rule 11 colloquy and in his lawyer's advice.

### (a)

■ The district court engaged in a thorough and altogether exemplary Rule 11 colloquy. Judge Beistline verified the factual basis for the guilty plea, and specifically articulated the elements of the crime, including the requisite intent to be proven by the government beyond a reasonable doubt. Judge Beistline repeatedly emphasized the conditional nature of the plea, and Henry's entitlement to persist in a not guilty plea. While Judge Beistline failed to explicitly spell out the maximum statutory penalties faced by Henry, he did specifically set forth the potential guideline range Henry faced, and made clear that he was not bound by anyone's sentencing recommendation.

### (b)

■ We have previously stated that " 'an erroneous prediction by a defense attorney concerning sentencing does not entitle a defendant to challenge his guilty plea,' although an exception might be made in a case of 'gross mischaracterization of the likely outcome.' " *United States v. Michlin,* 34 F.3d 896, 899 (9th Cir.1994) (citations omitted). Henry has demonstrated nothing more than an inaccurate prognostication by counsel regarding his likely sentence. Counsel informed him that his offense level would fall somewhere between 20 and 24, while the district court ultimately settled on an offense level of 25. Counsel's prediction of a sentencing range was not far removed from the sentence actually imposed—there was a difference of a mere two months between the maximum possible penalty under his counsel's prediction and the sentence settled upon by the court.

Moreover, Henry is not entitled to relief on the basis of his attorney's inaccurate statement that the Louisiana arrest would have no impact on his sentence, since that statement was not a "gross mischaracterization" of the likely result. *Sophanthavong v. Palmateer,* 365 F.3d 726, 734 (9th Cir.2004). Even assuming that counsel's averments constituted ineffective assistance rather than an error based on her reasonable professional judgment, Henry cannot show that there is a reasonable probability that, but for these statements, he would not have pleaded guilty. *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Thus, the district

court did not abuse its discretion in denying his motion to withdraw the guilty plea.

### 5.

■ Finally, Henry argues that the district court erred in including as "relevant conduct" for the purposes of a sentence enhancement under U.S.S.G. § 1B1.3 his alleged ecstasy trafficking in Louisiana. Section 1B1.3 authorizes a sentencing judge to aggregate "quantities and types of drugs not specified in the count of conviction ... if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." *Id.* cmt. background. In determining whether prior acts are "sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses," a sentencing court should consider "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." *Id.* cmt. n. 9. The district court specifically noted that the alleged Louisiana crime involved the same drug, a significant amount of cash, and an identical "mode of operation" as the Alaska crime. Moreover, the court found a relatively insignificant three-month delay between the incidents, indicating the close connection between the offenses. The district court did not clearly err in concluding that the Louisiana ecstasy trafficking constituted "relevant conduct."[1]

**AFFIRMED.**

---

1. At oral argument, Henry raised the specter of the Supreme Court's recent decision in *Blakely v. Washington,* — U.S.—, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), as a possible ground for challenging the sentence imposed. Although we have authority to consider *sua sponte* a claim that was not raised initially on appeal "when a change in law raises a new issue while an appeal is pending," *Parks Sch. of Bus., Inc. v. Symington,* 51 F.3d 1480, 1488 (9th Cir.1995), we exercise our discretion to decline to do so at this time. *United States v. Bird,* 359 F.3d 1185, 1189 n. 1 (9th Cir.2004); *see also Kimes v. Stone,* 84 F.3d 1121, 1126 (9th Cir.1996) ("The decision to consider an issue not raised below is discretionary."). Our decision does not, however, foreclose Henry's ability to raise the issue in any subsequent proceedings before this court, such as a

petition for rehearing. *See Escobar Ruiz v. INS,* 813 F.2d 283, 285–86 (9th Cir.1987) ("Courts of Appeals will ordinarily not consider for the first time on rehearing issues not presented by the parties in their briefs on appeal," but a case that involves "extraordinary circumstances [may] justify our considering on petition for rehearing, issues which were not previously presented." (citations omitted)).

